IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

CARL L. GRAGG, )
)
        Plaintiff, )
)
v. ) Case No. 12-3252-CV-S-ODS-SSA
)
CAROLYN COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born June 17, 1958, and has a high school education. R. 24-25. Plaintiff has prior work experience as a shear operator, industrial truck operator, and spool assembler. R. 17, 39-40. Plaintiff alleges he became disabled on November 1, 2004, due to headaches, as well as pain in his neck, arm, and back. R. 29. He also complained of depression and memory and concentration problems. R. 29, 35-36.

On November 2, 2004, Plaintiff was examined at Mountain Grove Medical & Laser Center ("Mountain Grove Medical") for neck pain caused by a work-related injury. R. 305. On December 9, 2004, Plaintiff was examined by Alan Scarrow, M.D., who noted that despite Plaintiff's complaints of significant pain, a MRI revealed no significant abnormalities. R. 269. Dr. Scarrow recommended physical therapy and a nerve conduction study. R. 267, 269. Based upon his findings, Dr. Scarrow recommended that Plaintiff continue physical therapy and transition back to work. R. 272, 274.

Plaintiff received physical therapy for his neck from June through August of 2005. R. 331-64.

On July 27, 2005, Plaintiff was examined by Ted A. Lennard, M.D., a neurologist. R. 542. Upon examination, Plaintiff had 4/5 strength of the left triceps, 4+/5 strength with left wrist extension compared to 5/5 on the right. R. 542. Two months later, Dr. Lennard assessed Plaintiff with a 10% permanent partial impairment of the whole body, and imposed a 25 pound lifting restriction. R. 539.

Plaintiff received his primary care treatment and medications at Mountain Grove Medical eight times in 2005 and was diagnosed with neck pain, hyperlipidemia, and hypertension. R. 292-99. Plaintiff was examined at Mountain Grove Medical for neck pain twice in 2006 and nine times in 2007. R. 281-89, 290-91. Plaintiff was diagnosed with various cervical spine disorders and hypertension.

On April 3, 2008, Plaintiff was examined by Mark Crabtree, M.D., a neurosurgeon, and was diagnosed with neck pain and left upper extremity pain with a possibility of radiculopathy. R. 536-37. On July 21, 2008, Plaintiff underwent a diskectomy the C6-7 vertebra. R. 306, 322-23. On August 14, 2008, Dr. Crabtree recommended physical therapy for Plaintiff's neck pain. R. 509.

On September 17, 2008, Plaintiff returned to Dr. Lennard, who imposed a five pound lifting restriction and diagnosed Plaintiff with neck and limb pain, and cervical impairments. R. 505-08. During the visit, Plaintiff denied symptoms of depression, anxiety, or mental problems. R. 506. On January 6, 2009, Dr. Lennard assigned Plaintiff a 30 pound lifting limit. R. 489-90.

Dr. Crabtree examined Plaintiff on January 15, 2009, who noted Plaintiff had decreased sensation and that the grip on his left hand was 4/5, but that Plaintiff had good strength. R. 484. In April 2009, Dr. Crabtree noted Plaintiff had been released for work with a 30 pound lifting restriction but was not working. R. 480. He also opined that the post-operative MRI scans "look[ed] good." R. 480.

On May 3, 2009, Dr. Lennard diagnosed Plaintiff with status-post fusion of the C6-7 vertebra and cervical degenerative changes, and assessed Plaintiff with a 15% partial permanent disability of the body as a whole with a 30 pound lifting restriction. R. 478-79.

2

On May 24, 2009, Plaintiff underwent an independent medical examination with Shane Bennoch, M.D., in connection with Plaintiff's worker's compensation claim. R. 543-57. Dr. Bennoch found Plaintiff had decreased sensation in his arms with reflexes measured at 1/4, 5/5 muscle strength in his upper extremities and had decreased range of motion of his cervical spine. R. 553-54. Dr. Bennoch diagnosed Plaintiff with spine, cervical, and neck disorders, as well as decreased grip. R. 555. On August 14, 2009, Dr. Bennoch completed a medical source statement and opined that Plaintiff was capable of lifting less than ten pounds, standing and/or walking for less than two hours throughout an eight hour workday with a need to alternate between sitting and standing periodically, and limited to reaching occasionally in all directions. R. 558-59.

On May 4, 2010, Michael Ball, D.O., examined Plaintiff at the request of Disability Determination Services. R. 561-65. Plaintiff told Dr. Ball that he drank about twelve beers a day to relieve his pain. R. 561. Plaintiff claimed he drank this much for five years and had not taken any pain medication for "several years." R. 561. Dr. Ball noted that Plaintiff had reduced grip strength in his left hand, severely limited range of motion in the cervical spine, and was unable to squat without the assistance of the treatment table. R. 562. Plaintiff had no limitation in his ability to sit or stand, no restriction in his ability to lift, carry, or handle smaller objects less than five pounds with his left upper extremity, but did not have any restriction in his ability to lift with the right upper extremity. R. 562. Finally, Dr. Ball opined that Plaintiff had no restriction in his ability to travel, but would have difficulty walking on uneven terrain or climbing. R. 562.

On May 13, 2010, Lester Bland, Psy.D., a state agency reviewing source, opined that Plaintiff did not have a medically determinable mental impairment. R. 573-83. On June 30, 2010, Janice May, Psy.D., performed a psychological assessment on Plaintiff and diagnosed him with major depressive disorder, an identity problem, and a phase of life problem. R. 588. Dr. May assessed a Global Assessment of Functioning score of 43. R. 588. Dr. May opined that Plaintiff had a mental disability and emotional distress that prevented him from engaging in full time employment or gainful activity. R. 588. She noted Plaintiff had trouble sustaining concentration, carrying out and remembering detailed instructions, and engaging with others in an appropriate manner. R. 588. On July 2, 2010, Dr. May completed a Medical Source Statement-Mental and found Plaintiff

was markedly limited in the ability to set realistic goals or make plans independently of others and limited in twelve other areas of functioning. R. 594-95.

Plaintiff was examined and treated by David Dale, D.O., between June and December 2010. Dr. Dale noted that Plaintiff was not taking any medications at the time he presented to him in June. R. 604. He diagnosed Plaintiff with surgical neck syndrome, major depressive disorder and muscle spasms. R. 597-604. An examination of Plaintiff's extremities revealed "normal" results, but Plaintiff had decreased strength and range of motion. R. 597-601, 603-04. Dr. Dale prescribed Plaintiff with an antidepressant and a narcotic pain medication. R. 599, 601-04. Dr. Dale completed a Medical Source Statement-Physical on September 15, 2010, and opined Plaintiff could: lift and/or carry five pounds; stand and/or walk for thirty minutes at a time and two hours throughout an eight hour workday; sit for less than thirty minutes at a time and two hours throughout an eight hour workday; occasionally balance, stoop, reach, handle, and finger; need to lay or recline every forty-five minutes for thirty minutes at time. R. 589-91.

In January 2011, Plaintiff had a colon polyp removed. R. 618. After the surgery, Plaintiff tolerated his diet, had good bowl function, and "continued to do well otherwise." R. 618. The attending physician discharged Plaintiff in "good" condition. R. 618.

An administrative hearing was held on February 9, 2011. R. 20-46. Plaintiff testified he is unable to lift, bend, and turn his head. R. 29, 32, 34. He could stand 10-15 minutes at a time. R. 30. Plaintiff reported a pain level of 7 out of 10 at the time of the hearing, but was not taking any pain medication because he ran out. R. 29-30. Plaintiff had previously self-medicated with alcohol, but had not done any drinking over the past year. R. 38. Plaintiff spends most of his days in the recliner and his children do the chores and housework. R. 31-32. Plaintiff has constant headaches and crying spells. R. 33-35. He also testified that he has problems with his bowl functions since he had a colon polyp removed and has to go to the bathroom "about three times a day," but noted that "it's nothing serious." R. 33-34. Sometime soon after his neck surgery in 2009, his workers' compensation claim was settled. R. 37.

The ALJ issued his decision on February 24, 2011. R. 19. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in

substantial gainful activity since November 1, 2004, the alleged onset date. R. 12. At step two, the ALJ found Plaintiff had the following severe impairments: disorder of the back, status post cervical diskectomy, status post colon resection, and affective mood disorder. R. 12. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 12. At steps four and five, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work (lift up to 20 pounds occasionally, lift 10 pounds frequently, sit for 6 hours of an 8-hour day and stand for 6 hours of an 8-hour day) as defined in 20 CFR 404.1567(b) and 416.967(b) except: He can occasionally climb stairs, but never climb ladders, ropes and scaffolds. He can occasionally stoop, crouch, kneel or crawl, and occasionally push and pull with his upper extremities. He can perform simple to intermediate tasks, but is limited to jobs that do not demand attention to details or complicated job tasks or instructions (secondary to his chronic pain and affective disorder). He may work in proximity to others but is limited to jobs that do not require close cooperation and interaction with co-workers, in that he would work best in relative isolation. He is limited to jobs requiring occasional cooperation and interaction with the general public. He retains the ability to maintain attention and concentration for two-hour periods at a time, adapt to changes in the workplace on a basic level and accept supervision on a basic level.

R. 14. Next, the ALJ found, based on the vocational expert's testimony, Plaintiff was unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that Plaintiff could perform including a power screwdriver operator, patching machine operator, and riveting machine operator. R. 17-18. Finally, the ALJ concluded Plaintiff was not disabled. R. 19.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla"

5

of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. Determination of Plaintiff's Credibility

Plaintiff contends the ALJ erred in discrediting Plaintiff's testimony and allegations. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) sets out the standard for analyzing a claimant's subjective complaints of pain:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> > 1. the claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain;
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.3d at 1322.

In this case, Plaintiff went for more than a year without treatment between his last exam with Dr. Lennard in May 2009 until June 2010 when he presented to Dr. Dale. R. 480, 604. The failure to seek regular medical treatment for disabling symptoms is

6

inconsistent with Plaintiff's subjective complaints of pain. *See Long v.* Chater, 108 F.3d 185, 188 (8th Cir. 1997). Plaintiff also reported running out of his medication, which the ALJ noted may suggest he was not taking his medication as directed. *Klingler v. Astrue*, No 11-3066-CV-S-REL-SSA, 2012 WL 1948026, at *19 (W.D. Mo. May 30, 2012) ("The claimant's voluntary noncompliance with treatment is a negative factor in determining credibility."). Although Plaintiff testified he no longer drank alcohol, he had previously self-medicated with alcohol. R. 38, 561. Plaintiff's lack of mental health treatment from a specialist also suggests that his depression is not as severe as alleged. *See Long*, 108 F.3d at 188. Finally, the ALJ paid attention to Plaintiff's allegations of daily functioning, but noted that the reason for Plaintiff's "very low level of activity [was] unclear" because his treating physicians cleared him to return to work with a 30 pound lifting restriction.

Under the facts of this case, the Court cannot conclude that the ALJ improperly weighted Plaintiff's credibility regarding his subjective complaints of pain. This Court will not substitute its opinion for that of the ALJ, who was in a better position to assess credibility. *Brown v. Charter*, 87 F.3d 963, 965 (8th Cir. 1996). Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

### B. Evaluation of Medical Evidence

Plaintiff argues the ALJ improperly considered the medical opinion evidence of record. Specifically, Plaintiff contends the ALJ erred in weighing the opinions of Dr. Dale and Dr. May.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)); *see also* 20 C.F.R. § 416.927(b). A treating physician's opinion will be given controlling weight if it is not inconsistent with the other substantial evidence in the record and is well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1527(d)92), 416.927(d)(2); *see also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (stating that the Eighth Circuit has "upheld an ALJ's decision to discount or even

7

disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions") (internal citations and quotation marks omitted).

In this case, the ALJ noted Dr. Dale's treatment of Plaintiff was based primarily on Plaintiff's subjective complaints of pain and allegations of impairment. R. 597-604. Dr. Dale did not send Plaintiff for any follow-up testing or consulting to determine the cause of his neck pain or to evaluate other treatment options. There is substantial evidence to support the ALJ's decision not to assign controlling weigh to Dr. Dale's opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that a treating physician's opinion may be given less weight when based on the claimant's subjective complaints rather than an objective medical evidence).

The ALJ gave "little weight" to Dr. May's opinion that Plaintiff had a mental disability preventing him from engaging in full time employment or gainful activity. The ALJ correctly noted that Dr. May's opinion was a conclusory statement as to the legal issue of disability under the Social Security Act, which is left up to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also Nash v. Heckler*, 616 F. Supp. 132, 134 (W.D. Mo. 1985).

The ALJ gave "some weight" to Dr. May's opinion regarding Plaintiff's functioning and incorporated most of the limitations into the RFC. R. 16. For example, Dr. May observed that Plaintiff's attention and concentration were limited due to external stimuli and emotional triggers, but redirection was easily established. R. 587. Dr. May also noted that Plaintiff did not appear to experience difficulties processing information in a logical and coherent manner, and was able to provide feedback appropriate to the task at hand. R. 587. Plaintiff spends a significant amount of time in social isolation and has difficulty maintaining and initiating social interactions. R. 585, 587. Dr. May also opined that Plaintiff would have difficulty carrying out or remembering detailed instructions and engaging with others in an appropriate manner. R. 588. The ALJ incorporated these

8

findings into the RFC when finding that Plaintiff was limited to jobs that do not require complicated tasks or instruction, that he would work best in relative isolation, and that he retains the ability to maintain attention and concentration for two hours at a time. R. 14.

Even though the ALJ accounted for most of the limitations included in Dr. May's opinion, the ALJ noted that not all were supported by Dr. May's treatment notes. For example, Dr. May opined that Plaintiff had limitations regarding goal-setting, workplace behavior, and social behavior. R. 595. However, as the ALJ pointed out, these were contradicted by Dr. May's observations that Plaintiff had intact judgment and good insight. R. 587-88. The ALJ properly discounted Dr. May's opinion. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). Further, Plaintiff lacked a history of mental health treatment, which could suggest his mental impairments were not as severe as alleged. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."). Although Plaintiff contends the ALJ should have considered his finances as a reason for not obtaining mental health treatment, Plaintiff offered no evidence that he was denied treatment because of his finances. *See Murphy v. Sullivan*, 953 F.2d 383, 387 (8th Cir. 1992).

The Court finds that there is substantial evidence in the Record to support the ALJ's evaluation of the medical evidence.

### C. Determination of Plaintiff's Residual Functional Capacity

Plaintiff argues the ALJ failed to base the RFC on the substantial medical evidence. Specifically, Plaintiff contends the ALJ erred in (1) assigning "more weight" to the opinion of Dr. Ball, and even if it was not error, the ALJ failed to include the limitations assessed by Dr. Ball in the RFC, (2) failing to include any limitations tied to Plaintiff's severe status post colon restriction; (3) assessing the mental RFC by failing to tie the RFC to the limitations assessed by Dr. May. The Court will not separately discuss the argument that relates to Dr. May, as it has already found that the ALJ properly incorporated the limitations assessed by Dr. May into the RFC. *See supra*

9

Section III.B. The Court finds that there is substantial evidence to support the ALJ's RFC determination.

First, the ALJ did not err in assigning "more weight" to the opinion of Dr. Ball, and examining source, than the opinion of Dr. Dale, a treating source. Plaintiff contends the ALJ only relied on Dr. Ball's opinion and it was err because it conflicted with a treating source. *See Lehnartz v. Barnhart*, 142 F. App'x 939, 942 (8th Cir. 2005) ("[A] non-treating physician's assessment does not alone constitute substantial evidence if it conflicts with the assessment of a treating physician."); *see also Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003) ("A one-time medical evaluation do[es] not constitute substantial evidence on which the ALJ can permissibly base his decision."). However, the ALJ made a RFC determination based on all the medical and non-medical evidence of record, including the treating source opinion of Dr. Lennard. R. 14-17. The Court does not find it was err to assign "more weight" to Dr. Ball's opinion because he did not base his RFC determination solely on that opinion.

In the alternative, Plaintiff argues the ALJ failed to include the limitations assessed by Dr. Ball in the RFC. This argument is without merit. Dr. Ball noted that Plaintiff had severely limited range of motion in the cervical spine, no limitation in his ability to sit or stand, and difficulty climbing due to his weakness in his left lower extremity. R. 562. Dr. Ball opined that Plaintiff could lift less than five pounds with his left upper extremity, but had no restriction in his ability to lift with the right upper extremity. R. 562. The RFC stated that Plaintiff could not climb ladders, ropes and scaffolds, but could occasionally stoop, crouch, kneel, and crawl and stand for six hours of an eight-hour day. R. 14. Although the RFC stated that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, the ALJ noted that those limitations are consistent with Dr. Ball's opinion because the RFC "addresses bilateral lifting and the claimant can rely on his lifting more with his right upper extremity." R. 15. Although the Record does reflect limitations in Plaintiff's left upper extremity, the ALJ correctly pointed out that there is no evidence that Plaintiff could not lift twenty pounds bilaterally on an occasional basis.

Second, Plaintiff contends that his two colon surgical procedures and his need to use the bathroom "about three times a day" show that his RFC should have included

limitations due to his severe status post colon restriction. Although the ALJ was silent regarding any limitations due to his colon, the Court finds that the Record reflects that the ALJ implicitly found that Plaintiff was not limited due to his colon impairments. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) ("We note initially that all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited."). The Court finds there is substantial evidence to support the ALJ's RFC determination.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 20, 2013                UNITED STATES DISTRICT COURT